UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DENNIS THRASHER** | **CIVIL ACTION NO. 3:15-cv-2701** |
|     **LA. DOC #392684** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **EAST CARROLL PARISH** | |
| **SHERIFF'S DEPARTMENT, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

    Pro se plaintiff Dennis Thrasher, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on November 12, 2015. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). He is incarcerated at the Riverbend Detention Center (RDC) and he complains that he was denied prompt and appropriate medical care after he was bitten by a spider on December 5, 2014. Plaintiff sued the East Carroll Parish Sheriff's Department, the RDC Medical Department, Warden Johnny Hedgemon, Capt. Robert Russell, Nurse Lena, "Jane Doe", Sheriff Wydette Williams and the DOC. He prays for "compensation for worrying; mental health/poor health care; poor sanitary conditions damages..." This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Statement of the Case*

    On Friday December 5, 2014, plaintiff was bitten by a spider on the knuckle of his left forefinger. On December 6 plaintiff noticed what appeared to be "an ant bite like bump" at the

site. On December 7 plaintiff's finger "was swollen and throbbing with pain." Plaintiff made a sick call request at that time and requested a band aid and some ibuprofen.[1] He had to wait until "last pill call" but was then administered the ibuprofen whereupon he went to sleep.

On December 8 plaintiff awoke to find that his left had was swollen. He was examined by Nurse Lena at sick call and put on the list to see a physician. Plaintiff showed his hand to various corrections officers but they provided no assistance; he requested the opportunity to see one of the ranking officers but was informed that Capt. Russell was on vacation and no other ranking officers were present.

At lunch time plaintiff showed his hand to Warden Knight who advised plaintiff that the swollen area would need to be lanced to drain the poison. Plaintiff's repeated requests to see a ranking corrections officer were fruitless. That evening he was given more ibuprofen and went to sleep. Shortly after midnight, a corrections officer checked in on him. On December 9 plaintiff awoke to discover that his hand and wrist were swollen. At 9 a.m. he was examined by a physician. Plaintiff advised the physician that he had been bitten by a spider. The physician stuck plaintiff with a needle three times but was unable to drain any of the pus. The physician then prescribed antibiotics. That afternoon he asked to be taken to the hospital. Corrections officers called the nurse on duty who advised them to tell plaintiff to take his medicine and lay down. Plaintiff awoke during the night but was unable to locate the officer to get ibuprofen. Eventually he was seen by the warden who advised him to wait 48 hours to see if the antibiotics would

---

[1] Ibuprofen or "I.B.U's" is in a class of medications called NSAIDs (non-steroidal anti-inflammatory drugs). It works by stopping the body's production of a substance that causes pain, fever, and inflammation. Medline Plus, Drugs & Supplements, National Institutes of Health, U.S. National Library of Medicien at:
https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682159.html

resolve the problem.

On the evening of December 10, plaintiff appeared dizzy and weak and within minutes he was taken to the local hospital in Lake Providence.  Plaintiff was examined by a physician who injected him with a pain killer and an antibiotic. He was told to return on December 11.

He returned to the hospital as directed and they sent him to the LSU Hospital in Shreveport where on December 12, 2014, surgery was performed. Plaintiff remained in the hospital until December 14, 2014, at which time he was discharged and returned to RDC.

On December 15 and 16 the packing and bandage were changed. On December 17 plaintiff was transported back to LSU and his bandage was changed to a "wet to dry bandage." He returned to RDC and his bandage was changed again on December 18, 19, and 20. Plaintiff asked for pain medication but was advised that the medication was not available from the prison pharmacy.  Plaintiff's bandages were changed each day from December 21 through January 13, 2015. On January 14, 2015, plaintiff returned to LSU for a check up and his bandage was changed to "dry only."  On January 15-16 Nurse Lena changed the wound dressing to a band aid with triple antibiotic ointment. On January 17 another nurse provided plaintiff with band aids and packets of triple antibiotic ointments and instructed to wash the wound with soap and apply the dressing each day.  Plaintiff did as instructed but complained that the "sore itself looks good but all around it still hurts to the touch [and] turns reddish purple and hurts when cold."  From January 27-31 plaintiff repeated the steps as instructed and noted that "the sore looks like a blister.  really really red."

On February 1, 2015, the blister "popped"; plaintiff continued to treat the wound as instructed. On February 2, 2015, the wound developed a scab but was painful when cold.

Plaintiff continued to treat the wound as instructed and on February 11, 2015, he returned to the LSU Hospital for a check up. The examining physician advised plaintiff that "everything looks good" and that the purple coloring would probably last another 6 months. Plaintiff was released from hospital care but continues to complain about pain and fluid build up.

On some unspecified date plaintiff submitted Grievance No. 1242 to the RDC administration. He apparently complained about inadequate medical care and on February 26, 2015, Capt. Russell determined the grievance to be unfounded since plaintiff "... was seen by medical in a timely manner, sent to hospital, seen by doctors..." [Doc. 1-2]

## *Law and Analysis*

### *1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Medical Care*

Plaintiff is an inmate in the custody of the LDOC. He complains that the defendants – physicians, health care professionals, and prison administrators – violated his Eighth Amendment right to be free from cruel and unusual punishment when they mis-diagnosed the serious nature of his injury and delayed sending him to a hospital within days of his injury.

The constitutional right of a convicted prisoner to prompt and appropriate medical care is indeed based upon the Eighth Amendment's prohibition of cruel and unusual punishment.  In order to establish an actionable  violation of the Eighth Amendment,  the prisoner plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted).

It is manifestly obvious that plaintiff simply disagrees with the diagnostic and treatment decisions of the health care professionals – two nurses, the prison physician, and the physician on duty at the hospital in Lake Providence  –  who were responsible for his care and treatment. Plaintiff disagrees with the conclusions and treatment options offered by the RDC medical staff and the local physicians; however, his disagreement with the health care professionals' diagnosis

or treatment choices falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

Clearly, plaintiff was afforded prompt and appropriate treatment under the circumstances. Plaintiff was bitten on December 5, 2014. However, by his own admission, the bite did not manifest itself as harmful until two days later, on December 7, when his hand began to swell. He was immediately given ibuprofen for pain and to reduce the swelling and a band aid to shield the wound. Thereafter, when the swelling and pain continued he was examined and treated by a physician at the RDC on December 9. The physician prescribed a course of antibiotics and when that treatment failed and plaintiff exhibited further signs of infection, he was taken to the local hospital on December 10 where he was examined by another physician who injected him with medication for pain and infection. When that course of treatment proved ineffectual, he was sent to the LSU Hospital on December 12, 2014, where surgery was performed. Thereafter, by his own admission, his wound was properly dressed and attended to until he was discharged by the treating physician. Clearly, given the circumstances as described above, plaintiff has failed to establish deliberate indifference on the part of any of the defendants.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved

by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

In Chambers, Monroe, Louisiana, February 11, 2016.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE